## B. P. EDWARDS v. JAMES CONNOLLY ET AL.

### (Case No. 1593.)

1. DELIVERY.— In a proceeding under the statute to try the right of property a claimant's bond was executed, and on a trial the property was adjudged to be subject to the levy; judgment was rendered requiring the property to be returned, and for execution. The property levied on consisted of a sorghum mill and evaporator, which were so heavy as to require wagons to remove them. *Held*, that a tender, by the claimant, of the property back to the officer, which was at that time not visible to the parties, but ten or fifteen miles removed from where the tender to return it was made, did not constitute such a return of the property as is contemplated by the statute. For facts on which the opinion is based see statement of case.

ERROR from Burleson. Tried below before the Hon. Spencer Ford.

Suit by James Connolly, J. C. Womble and J. L. Dean against Edwards and one B. B. Hunt, constable, etc., as defendants, to enjoin an execution in favor of the appellant against the appellees, based upon a forfeited claimant's bond, executed by Connolly as principal and the other appellees as his sureties, and a judgment of the court thereon on a trial of the right of property. The judgment and execution were for $500, the value of the property claimed, and $50 damages. By the writ of injunction the whole judgment and execution were enjoined. On the final trial, the injunction was perpetuated as to the $500 and dissolved as to the $50.

The chief controversy on the trial was whether or not the plaintiffs had complied with the condition of their bond by making due return of the property claimed, in a proceeding for the trial of the right of property, in as good condition as when it had been delivered to the claimant; the plaintiff alleged such a return and the acceptance of the same by the officer; the defendant denied that any proper return had been made to the officer, or that he had accepted of it as tendered, and denied that the property was in as good condition as when it had been delivered to the claimant.

As to the alleged return of the property and its acceptance by the officer, the testimony was as follows: The property levied on, consisting of a sorghum mill and evaporator, was cumbersome and bulky, and required to be moved from place to place by wagons; they made two or three wagon loads; the property when levied on was at Dean's store, in the western portion of Burleson county, and was there delivered by the officer to the claimant on the execution of his oath and claim bond, October 10, 1876; it was afterward re-

moved by the claimant and defendant in execution to a point twenty miles distant in the Brazos bottom in the eastern portion of the county, where it was used in taking off a sugar crop. While it remained at this point it was again levied on by the constable, Hunt, as the property of the claimant, under an execution against him in favor of one G. W. Rogers. Pending this levy, the property remained in the custody of one Henry Hodges, as the agent of the constable. On the 19th of March, 1877, the claimant, Connolly, and his surety, Womble, were in the town of Caldwell, which is the county seat of Burleson county, and the place of the constable's office and his usual place of business, and there met the constable and A. W. McIver, Esq., who was the attorney of Rogers, plaintiff in the execution against Connolly, at the office of said McIver, and it was then and there agreed between the plaintiffs Connolly and Womble and the said McIver that the principal and interest of the Rogers debt should be discharged by McIver taking the note of Dean and Womble, due at a future day, for the amount of the Rogers debt, which was done; it was also agreed by the constable that the costs due the various officers under execution should be paid by the surety, Womble, to whom the constable agreed to look. The costs were not paid at the time, but were paid subsequently during the course of the same day. On arriving at this agreement, McIver directed the constable to release the property to Connolly, which he did verbally, Connolly accepting in the same manner. The parties then separated, the constable going into a neighboring store about one hundred yards distant. After an interval of some ten minutes, Connolly again sought the constable and said to him, "I now tender back the mill and evaporator to be sold under the Edwards and Hale execution." The officer suggested that they should go back to Judge McIver's office, which they did. There was some conflict as to the further details of this interview. The plaintiffs' witnesses stated that Connolly repeated to the officer what he had previously said to him at the store, to the effect that he now tendered back the property to be sold under the Edwards–Hale execution; that the officer made no reply, and that they construed his silence as an acceptance of the tender. The defendant's evidence was to the effect that the officer refused to receive the property under the circumstances, giving as a reason for his refusal that the machinery was twelve or fifteen miles distant, and that he could not, as the law required him to do, see and compare it with its condition at the time of its delivery to the claimant. The property was at the time still in the Brazos bottom, the parties

being at Caldwell. The distance between the two places was ten or twelve miles; two or three wagons would be required to move the machinery, and the cost of bringing it to Caldwell would have been $10 or more. It would have cost about $20 to carry it back to Dean's store, where Connolly had received it from the officer.

*Sayles & Bassett,* for plaintiff in error, cited: Pasch. Dig., 5310, 5316; Webster's Dict., "Return;" Cotton Press Co. *v.* Bradley, 52 Tex., 600; Deel *v.* Berry, 21 Tex., 463; Hardin *v.* Titus, Dallam, 622; 2 Greenl. Ev., §§ 609, 610, 611*a;* 2 Pars. Cont., 649–651; Smith's Merc. Law, 608–10; Hyatt *v.* Adams, 16 Mich., 199.

No briefs on file for defendant in error.

West, Associate Justice.— We are of opinion that the evidence in this case does not disclose such a delivery and return of the property in question to the officer as is required by the statute.

The law (Pasch. Dig., art. 5316), by its terms, contemplated something more than was done in this case. Under the law the whole of the property is to be returned. It is also to be returned in as good condition as the party received it. In order to determine whether all the property is returned, and to learn whether it is in such a condition as would authorize him under the law to receive it, the officer should be placed in such a position to the property that he can inspect it. There must be, in fact and in truth, an actual return and delivery.

In his chapter on Bail and Delivery Bonds, alluding to the latter class of bonds, Mr. Drake, speaking of the delivery of the property necessary to a compliance with such a bond, uses the following language: " *The delivery must be an actual one* — that is, the property must be brought and pointed out, and offered to the officer. Therefore, when a forthcoming bond was given for a slave, and the principal, on the day the slave was to be delivered, met the officer crossing the street rapidly, and said to him, 'Here is the boy; I have brought him to release J. on that bond;' and the officer replied, 'Very well;' but the slave was not pointed out and the officer did not see him, it was held to be no proper delivery." Drake on Attachment (5th ed.), sec. 335.

We do not wish to be understood as meaning to say that under no circumstances whatever would a delivery be good, except when the property was actually turned over to the officer.

There might be cases where the property was of such a character,

as a very large stock of goods in a warehouse, or where the property consisted of very numerous or very bulky articles, that the delivery of the key of the house, or a delivery of the property in some such mode as the law recognized as a delivery of property, might in some cases be sufficient if accepted by the officer.

What we mean to decide is, that to constitute such a return of the property as is contemplated by the law, something more must be done than was done in this case. Something that in fact and in law is a return of the property to the possession and control of the officer.

Nor does the evidence show very satisfactorily that the officer ever consented to receive the property in the manner in which it was offered or to recognize the tender as made.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered February 1, 1884.]